WILLIAM H. KNAUSS, Appellant, *v.* GOTTFRIED KRUEGER BREWING COMPANY, Respondent.

The provision of the statute of New Jersey in relation to brokers selling real estate, which prohibits them from claiming commissions unless their authority to sell is in writing, applies only to brokers who are themselves authorized to make a sale; it does not apply to one given no authority to fix the price or terms of sale, but who is simply employed to find and bring a possible purchaser to the vendor and is to receive compensation in case a sale is effected

So, also, the rule that a broker employed to buy or sell, who is invested with any discretion or upon whom his employer has a right to rely for the benefit of his skill or judgment, loses his right to compensation if he agrees to act in a similar capacity for the other party, does not apply to one simply employed to bring the parties together, and such an employment by the party desiring to sell does not prevent the acceptance of a similar employment from one wishing to purchase, and there is no violation of duty in such case on the part of the employee in agreeing for commissions from each party, or in failing to notify the one of his employment by the other.

*Holcomb* v. *Weaver* (136 Mass. 265); *Carman* v. *Beach* (63 N. Y. 97); *Murray* v. *Beard* (102 id. 508); *E. S. Ins. Co.* v. *A. C. Ins. Co.* (138 id. 446), distinguished.

*Knauss* v. *Gottfried Krueger Brewing Co.* (62 Hun, 46), reversed.

(Argued March 2, 1894; decided April 10, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of November, 1891, which affirmed a judgment in favor of defendant entered upon an order dismissing the complaint on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Andrew Wesley Kent* for appellant. No agreement, express or implied, was made in New Jersey. (*Waldron* v. *Richings,* 9 Abb. Pr. [N. S.] 359.) The contract was to be performed in New York; therefore, the law of New York governs its construction and effect. (*Jewell* v. *Wright,* 30 N. Y. 259; *Dickerson* v. *Edwards,* 77 id. 573.) The statute of New Jersey is not available as a defense. (*Graves* v. *Cameron,* 9 Daly, 152.) Plaintiff's relation to both buyer and seller was that of middleman. (Story on Agency, § 31; *Jones* v. *Schafer,* 105 N. Y. 289; *E. Ins. Co.* v. *A. Ins. Co.,* 138 id. 449.) Plaintiff's relation to the buyer and the seller being that of middleman, he may receive compensation from either, where each has agreed to pay, even without knowledge of the other. (*Rupp* v. *Sampson,* 16 Gray, 398; *Siegel* v. *Gould,* 7 Lans. 179; *Balheimer* v. *Reichardt,* 55 How. Pr. 414; *Herman* v. *Martineau,* 1 Wis. 136; *Stewart* v. *Mather,* 32 id. 844; *Barry* v. *Schmidt,* 57 id. 172; *Orton* v. *Schofield,* 61 id. 382; *Ranny* v. *Donovan,* 78 Mich. 318; *Montross* v. *Eddy,* 94 id. 100; *Manders* v. *Craft,* 32 Pac. Rep. 836; *Mullen* v. *Kietzleb,* 7 Bush, 253; *Green* v. *Robertson,* 64 Cal. 75.) The averments of the complaint are sufficient to justify a recovery as middleman. (*Velie* v. *N. C. Ins. Co.,* 12 Abb. [N. C.] 309; *Rogers* v. *N. Y. & T. L. Co.,* 134 N. Y. 219; *Moffat* v. *Fulton,* 130 id. 514.) The contract alleged in the complaint was that of middleman; the contract proven on the trial was that of middleman, and the contract conceded by defendant to have been made was that of middleman. The defendant did not plead any illegality in the transaction out of which the cause of action arose. Defendant did not plead that plaintiff sustained such a relation to Bliss as to preclude plaintiff's recovery against defendant, consequently such a defense was not available on the trial. (*Milbank* v. *Jones,* 127 N. Y. 370, 141 id. 347.)

*Louis Marshall* for respondent. The plaintiff was employed and paid by Bliss, who was, as the defendant claims, the broker of the purchaser, or, as the plaintiff claimed,

the purchaser himself. His employment by Bliss was not disclosed to the defendant. Under these circumstances the plaintiff cannot recover commissions of the seller. (*Carman* v. *Beach*, 63 N. Y. 97; Story on Agency, 31; *Farnsworth* v. *Hemmer*, 1 Allen, 494; *Claflin* v. *F. & C. Bank*, 25 N. Y. 293; *Gardner* v. *Ogden*, 22 id. 874; *Murray* v. *Beard*, 102 id. 508; *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 id. 85; Ewell's Evans on Agency, 14; *Greenwood* v. *Spring*, 54 Barb. 375; *Neuendorff* v. *W. M. L. Ins. Co.*, 69 N. Y. 389; *Raisin* v. *Clark*, 41 Md. 148; *Walker* v. *Osgood*, 98 Mass. 348; *Smith* v. *Townsend*, 109 id. 500; *Rice* v. *Wood*, 113 id. 133; *Bellman* v. *Loomis*, 41 Conn. 581; *Everhart* v. *Searle*, 71 Penn. St. 256; *Morrison* v. *Thompson*, L. R. [9 Q. B.] 480.) The contract of employment was made in the state of New Jersey and is void by the Statute of Frauds of that state. (*Arnold* v. *Angel*, 62 N. Y. 508.) It was not necessary for the defendant to affirmatively allege, by way of defense, that the appellant occupied toward Bliss such a relation as to disentitle him to compensation from the respondent. (*Griffin* v. *L. I. R. R. Co.*, 101 N. Y. 354; *Weaver* v. *Barden*, 49 id. 286; *Hier* v. *Grant*, 47 id. 278; *Knapp* v. *Roche*, 94 id. 333; *Gilman* v. *Gilman*, 111 id. 205; *Terry* v. *Munger*, 49 Hun, 560.) The grounds upon which the motion for a non-suit was based were sufficient to raise the question of plaintiff's inconsistent employment by Bliss; but, even assuming them to have been inartificially stated, the respondent has the right, in support of the judgment, to urge any sufficient ground appearing from the record which he might have raised in the court below, which could not have been there obviated. (*Scott* v. *Morgan*, 94 N. Y. 515; *Allard* v. *Greasert*, 61 id. 4; *Simar* v. *Canaday*, 53 id. 298; *Newcomb* v. *Clark*, 1 Den. 226; *Stevens* v. *Hyde*, 32 Barb. 171.) Assuming that the plaintiff was employed by the defendant to secure for its officers an introduction to Bliss, to enable them to negotiate a contract for themselves, and that the defendant regarded him as a middleman only, yet, since he did not stand entirely indifferent between the parties, and without defendant's

knowledge acted as the active adviser of Bliss, for a considera-
tion, he has forfeited his right to compensation from the
defendant. (Mechem on Agency, § 973.) It is not incumbent
upon the defendant to show actual injury to it in consequence
of the plaintiff's double dealing. It is sufficient to show the
existence of an opportunity of injury, the temptation to favor
one party at the expense of the other. (*Harrington* v. *V. G.
D. Co.*, L. R. [3 Q. B. Div.] 549.)

Peckham, J. This action was brought to recover for
services alleged by plaintiff to have been performed by him
for defendant in regard to the sale of the brewery owned by
the defendant, to one Robert Bliss or his assignee.

The answer put the employment in issue and denied that
any service had been performed by, or that any sum was due
to the plaintiff touching the subject of such sale. The com-
plaint was dismissed upon the trial and the General Term has
affirmed the judgment of dismissal.

Upon looking through the record containing the evidence
given on the trial it is clear that the admission made by coun-
sel for respondent in his brief, " that the action was, in fact,
tried upon the evidence in disregard of the pleadings," has a
good deal of support. We think it is too late to claim that
the plaintiff must be judged entirely by his complaint, as if it
had alleged his employment by defendant as a broker in the
strict sense of the word, to obtain a purchaser of the brewery
upon terms in regard to which he had some discretion. His
evidence upon the subject given at the trial does not prove
any such contract, and there was no evidence given which
contradicted him. It showed that he was claiming compensa-
tion from the defendant because of his having introduced the
president of defendant to Mr. Bliss, with whom or with
whose assigns the defendant subsequently completed a sale of
the brewery for the sum of $1,822,000.

It is our duty to review the case in the light of the evidence
given for the plaintiff, and if there were evidence of any
employment substantially within the general scope of the alle-

gations of the complaint, we think it should have been submitted to the jury, unless there were some other fact which also appeared and which constituted a defense to the action. The record shows there was evidence of the employment of the plaintiff for the mere purpose of bringing the possible buyer and seller together, and with the understanding that if a sale were to result the plaintiff was to have some compensation from the defendant for his services. The plaintiff testified that he was to have nothing to do with fixing the price or the terms of sale ; the principals were to do that part of the business ; all he had to do was to bring them together, and if through their subsequent negotiations a sale should result, the plaintiff was to be entitled to some compensation. The real defense which is sought to be maintained is that while acting for the defendant in a matter in which trust and confidence were reposed in him and where defendant relied upon his unbiased judgment, the plaintiff was at the same time, but unknown to the defendant, in the employment of the proposed purchaser and bound by his duty to such purchaser to do all he could to forward the interests of the purchaser as against the seller. There was another defense interposed upon the trial which consisted of a New Jersey statute relating to brokers selling real estate and which prohibited them from claiming commissions unless their authority for selling was in writing. The brewery which was the subject of sale in this case was situated in New Jersey and it was urged that the statute applied to the contract proved.

On this point we are of opinion that the statute has no application. It in terms refers to those brokers who are themselves authorized to make the sale or exchange of the lands, and here the proof is uncontradicted that the plaintiff had no such authority.

Upon the other question we think the defendant is clearly right as to the law, but we also think there is nothing in the evidence to make it applicable here.

We agree perfectly with the cases of *Carman* v. *Beach* (63 N. Y. 97) and *Murray* v. *Beard* (102 id. 508). The cases

upon the subject are also collected in the late one of *Empire State Insurance Co.* v. *American Central Ins. Co.* (138 N. Y. 446). It is undeniable that where the broker or agent is invested with the least discretion, or where the party has the right to rely on the broker for the benefit of his skill or judgment, in any such case an employment of the broker by the other side in a similar capacity, or in one where by possibility his duty and his interest might clash, would avoid all his right to compensation. The whole matter depends upon the character of his employment. If A. is employed by B. to find him a purchaser for his house upon terms and conditions to be determined by B. when he meets the purchaser, I can see nothing improper or inconsistent with any duty he owes B. for A. to accept an employment from C. to find one who will sell his house to C. upon terms which they may agree upon when they meet. And there is no violation of duty in such case in agreeing for commissions from each party upon a bargain being struck, or in failing to notify each party of his employment by the other.

Now, this, in substance, is what, according to the plaintiff's evidence, he contracted to do with these parties. He was employed by Bliss to see if he could not obtain customers who would sell their breweries upon terms to be agreed upon by the principals themselves, and he was employed by defendant to introduce its president to some one who wished to purchase, but the terms and all else regarding the contract were to be agreed upon between defendant and the purchaser. There is a piece of evidence which defendant claims is fatal to this view, and shows that the plaintiff violated his duty in concealing or in not mentioning his position with regard to Bliss. When the plaintiff came to the president of the defendant for the purpose of entering upon a discussion of the business and to learn whether he was desirous of selling, the plaintiff was inquired of by the president as to the responsibility of the parties the plaintiff spoke of as desiring or proposing to purchase, for it was said by the president that he did not care to go on with the matter or present it to others unless he knew

they (the persons mentioned by plaintiff) were responsible parties. The plaintiff says he assured the president that they were responsible. From that interview others followed, and finally the plaintiff introduced the president to Mr. Bliss, and the negotiations were thereafter conducted between them and lasted for quite a long time (a number of weeks) before they finally resulted in a sale effected upon terms made up and agreed upon entirely between the parties, without the slightest aid from or interference on the part of the plaintiff.

The defendant urges that the statement of plaintiff that the parties who were intending purchasers were responsible, was a statement upon which defendant was entitled to rely and to think that the plaintiff was giving the defendant the benefit of his own honest judgment uninfluenced by any concealed interest of his own in having the sale accomplished. We think this is an erroneous view of the situation. It is clear that the remark of the plaintiff in reference to the question of defendant's president was merely incidental, and that the question itself was in reality wholly beside the main question of sale. It was plainly an interrogatory for the purpose of learning in substance whether it was worth while to take the subject into consideration or whether it might not be mere irresponsible talk by men who had not the slightest intention or even power to carry out a sale. It had no bearing and was not asked for the purpose of obtaining knowledge upon the question whether or not to make a sale, or the terms or conditions of the sale if one were to be made. No reliance was placed upon the statement as a foundation for any condition of any contract subsequently made, nor was the question asked for any such purpose. This, we think, is apparent from the nature of the question and the circumstances under which it was asked and the facts that subsequently occurred. On its face the question manifestly had nothing to do with the subsequent transactions or with the material facts in the case. It was entirely preliminary in its nature and purpose. The answer might have determined the defendant's president to see the parties and then to make up his own opinion as to

whether to go on or not, and as to the terms and conditions of the sale to be made.

The case differs so widely from that of *Holcomb* v. *Weaver* (136 Mass. 265) that we cannot think it necessary to lengthen this opinion by referring to all the material facts in the case cited. In regard to the subject of the double employment, if it be of a nature where by possibility the interests of the parties may be diverse, we agree that it cannot be upheld if concealed from knowledge. There is nothing of that kind appearing in the contract or agreement with either party as testified to by plaintiff. The fact that the sale was afterwards arranged between the parties exclusively upon terms and conditions agreed upon between them and without any reference to any previous statement of plaintiff, shows that it was wholly immaterial, and was not put or answered upon any supposition that it could or would in any manner influence the conduct of the defendant after entering upon the negotiations. The defendant claims the sale was not in fact made to Bliss but to a third party. We think the evidence shows the sale was effected between the parties as contemplated in the contract, and that upon such sale the plaintiff became entitled to a reasonable compensation for the services rendered. He admits in his evidence that the president never said to him what particular sum of money would be paid him, or what rate of commissions, and his compensation will have to be decided upon by the jury at a sum which shall be reasonable for the labor performed. All this has been said as to the case which the plaintiff made out upon the trial. The evidence for the defendant has not been heard, and, of course, no opinion is expressed or entertained as to the merits of the controversy. It is a question for the jury to determine after hearing both sides.

For that purpose the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.